UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 1:16-cv-107-M |
| Plaintiff, | |
| v. | |
| RHODE ISLAND COMMERCE CORPORATION (F/K/A RHODE ISLAND ECONOMIC DEVELOPMENT CORPORATION), WELLS FARGO SECURITIES, LLC, PETER M. CANNAVA, KEITH W. STOKES, and JAMES MICHAEL SAUL, | |
| Defendants. | |

## PLAINTIFF'S SUMMARY OF THE CASE

Plaintiff Securities and Exchange Commission ("Commission") alleges that defendants Rhode Island Commerce Corporation ("RICC"), Wells Fargo Securities, LLC ("Wells Fargo") and Peter Cannava ("Cannava") engaged in misconduct in connection with the RICC's issuance of $75 million in taxable revenue bonds, the proceeds of which were loaned to 38 Studios, LLC ("38 Studios"). As a result of the defendants' misconduct, the disclosure document provided to investors in the 38 Studios Bonds (the "Bond Placement Memo") was materially misleading in two ways. First, it failed to disclose that the project being financed by the Bonds, the development of a video game, could not be completed with the financing the Bonds would provide and thus 38 Studios faced a known shortfall in funding. Second, it failed to disclose the full amount of the compensation that Wells Fargo was receiving as the result of a side deal that Wells Fargo had with 38 Studios that approximately doubled Wells Fargo's disclosed compensation.

1

### A. Violations Alleged

The Commission alleges that the RICC, as the bonds' issuer, violated Sections 17(a)(2) and (a)(3) of the Securities Act of 1933 ("Securities Act") by making misleading disclosures in the Bonds Placement Memo and by engaging in a course of business to defraud investors in those bonds by concealing 38 Studios' known funding gap.

The Commission alleges that Wells Fargo, the bonds' placement agent, violated Sections 17(a)(2) and (a)(3) of the Securities Act, and Section 15B(c)(1) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules G-17 and G-32 promulgated by the Municipal Securities Rulemaking Board ("MSRB") by making misleading disclosures in the Bond Placement Memo and by engaging in a course of business to defraud investors in those bonds by concealing 38 Studios' known funding gap and the additional fees it had contracted to receive from 38 Studios. The Commission also alleges that Cannava, the lead Wells Fargo banker on the 38 Studios Bond transaction, aided and abetted each of Wells Fargo's violations because he acted knowingly or recklessly and substantially assisted in Wells Fargo's violations. The elements of these violations are set forth in prior briefing *See* Dkt. No. 27 at 9, 27, 31, 38.

### B. Factual Detail

On November 2, 2010, the RICC sold $75 million of taxable revenue bonds to Wells Fargo, as a private placement agent, who then sold those bonds to investors. Cannava was the lead banker for Wells Fargo on the 38 Studios transaction, and was intensely involved in all of Wells Fargo's work on the deal. He had the authority to sign the contracts and agreements on behalf of Wells Fargo that related to the offering, and reviewed and approved the Bond Placement Memo on behalf of Wells Fargo. The RICC loaned the proceeds of the offering to 38 Studios, a start-up video gaming company, so that 38 Studios could relocate to Rhode Island and

develop a video game called Project Copernicus. The bond payments were to be funded from 38 Studios' anticipated repayment of the loan with revenues generated from Project Copernicus.

38 Studios told the RICC and Wells Fargo, including Cannava, that it would need at least $75 million to finish Project Copernicus and that it would need additional funds beyond that $75 million to move to Rhode Island and fund its operations. Defendants knew that 38 Studios would only receive about $50 million in net proceeds from the bond offering. They were thus clearly aware of the existing funding gap facing 38 Studios, and the consequent need, immediately after the bond issuance, for 38 Studios to raise at least $25 million in additional funds. This funding gap was immense; 38 Studios was only getting about 2/3 of the money it needed to develop Project Copernicus from the bond financing, leaving a 1/3 gap. Wells Fargo also knew that when it had tried to raise $25 million in equity (the same amount of money that 38 Studios was short in the bond financing) earlier in the year, they had been unsuccessful. Defendants failed to insist that that this material and non-speculative risk be disclosed to investors in the Bond Placement Memo.

38 Studios hired Wells Fargo in May 2010 to raise money for the company by selling equity. In connection with that equity offering, investment bankers at Wells Fargo investigated 38 Studios, its finances, and its financial projections and prepared an Equity Private Placement Memorandum containing detail about the company. None of the approximately 200 potential investors that Wells Fargo contacted decided to invest, and Wells Fargo and 38 Studios stopped working on that equity offering in favor of seeking financing from the EDC.

To ensure it would be paid for its services even if the equity offering was unsuccessful, Wells Fargo entered into the May 20, 2010 Agreement with 38 Studios that specified that Wells Fargo would be paid "Alternative Financing Fees" based on milestones related to the 38 Studios

3

Bond Offering. All of these fees, totaling $400,000, were directly tied to the issuance of municipal bonds by the EDC and were paid out of the proceeds of the 38 Studios bonds. Wells Fargo concealed these fees from investors in the bond offering. These undisclosed fees were both required to be disclosed by MSRB Rule G-32 and were independently material to reasonable potential investors because the undisclosed fees created a potential conflict of interest for Wells Fargo. Cannava was at least reckless in not learning the details of these undisclosed fees and making sure they were disclosed. While conducting his required due diligence investigation, Cannava should have learned that payment of these fees was intertwined with the stages of the bond offering and should have disclosed them. Instead, through a pattern of misconduct, Cannava was responsible for misrepresenting to the RICC that these fees did not exist, and for omitting their disclosure to investors.

Dated: November 23, 2016

Respectfully submitted,
SECURITIES AND EXCHANGE COMMISSION,

By its attorneys,

/s/ Kathleen Burdette Shields
Kathleen Burdette Shields (Mass. Bar No. 637438)
Rua M. Kelly (Mass. Bar No. 653351)
Louis A. Randazzo (New York Bar No. 2416485)
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8904 (Shields)
(617) 573-8941 (Kelly)
(617) 573-8985 (Randazzo)
(617) 573-4590 (Facsimile)
ShieldsKa@sec.gov; KellyRu@sec.gov; RandazzoL@sec.gov

Certificate of Service

      I, Kathleen Burdette Shields, hereby certify that on November 23, 2016, I caused a true copy of the forgoing document to be filed through the ECF system, and accordingly, the document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). There are no non-registered participants as of today.

                                    /s/ Kathleen Burdette Shields
                                    Kathleen Burdette Shields