UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-00107-M-PAS |
| RHODE ISLAND COMMERCE CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

---

**WELLS FARGO SECURITIES, LLC AND
PETER M. CANNAVA'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR JOINT MOTION FOR DISCOVERY SANCTIONS
AND, IN THE ALTERNATIVE, A LIMITED REOPENING OF FACT DISCOVERY**

Wells Fargo Securities, LLC ("Wells Fargo") and Peter M. Cannava ("Mr. Cannava") (collectively, the "Defendants") submit this Memorandum of Law in support of their Joint Motion for discovery sanctions to preclude the Securities and Exchange Commission ("SEC") from using certain witness declarations (the "Declarations") that it failed to produce to the Defendants. The SEC obtained the Declarations from investors, potential investors, and a rating agency. In the alternative, the Defendants request a limited reopening of fact discovery, solely to depose and seek limited information from the declarants, as Defendants would have done if the Declarations had been produced according to the rules, in a timely manner.

## INTRODUCTION

The SEC's case is based on two supposed omissions from the Private Placement Memorandum ("PPM") for the bond offering at issue in this matter, namely reference to (1) a so-called funding gap between the proceeds 38 Studios, LLC ("38 Studios") was to receive and the amount it needed to achieve certain goals and (2) $400,000 in fees Wells Fargo earned from its

work in connection with an earlier equity raise. [1]  The Defendants have consistently asserted that these supposed omissions were not material to investors.  Given the extensive disclosures provided in the PPM, particularly those making clear 38 Studios' lack of creditworthiness and risk of insolvency, the alleged omissions would not have significantly altered the total mix of information made available to investors.  Indeed, the SEC knew as much before it brought the case because it interviewed several actual investors and these investors told it that 38 Studios' financial prospects and Wells Fargo's fees were not significant to their investment decision.  At their depositions in this matter, these investors reaffirmed their statements and confirmed that they were well aware of risks associated with 38 Studios based on extensive disclosures in the PPM.[2]

---

[1]  As the SEC concedes, no investors were actually harmed by these alleged omissions.  They received all the payments they were promised and made handsome profits.

[2]  Regarding 38 Studios' financial prospects, the actual investors testified as follows: Excerpts from 30(b)(6) Dep. Tr. of James Shiel, dated Oct. 18, 2017, at 30:20–24, 32:3–7, attached as Exhibit A ("Shiel Dep.") ("Q: . . . How much weight did you put on the financial condition and prospect[s] of 38 Studios . . . ?  A:  None . . . . Q: Is it fair to say that upon reading this, though, or in making your decision you appreciated the risks associated with 38 Studios as a pre-revenue company?  A: Yes."); Excerpts from 30(b)(6) Dep. Tr. of Jack Winderl, dated Nov. 9, 2017, at 30:7–9, 36:14–18, attached as Exhibit B ("Winderl Dep.") ("Q: So is it fair to say that you understood there was a high risk of failure for that company?  A: Yes . . . . Q: . . . [I]n making your decision to purchase the bonds, is it fair to say that you did not put any significance in the financial conditions of or prospects of 38 Studios?  A: Correct."); Excerpts from 30(b)(6) Dep. Tr. of Paul Jungquist, dated Nov. 16, 2017, at 34:18–20, 36:2–7, attached as Exhibit C ("Jungquist Dep.") ("Q: How much weight, if any, did Sit put on the financial condition and prospects of 38 Studios?  A: Negligible . . . . Q: But is it fair to say that based upon the reading of the risks here, Sit was aware of the risks attendant to -- associated with 38 Studios?  A: Certainly should have been.  This is a key page, and it's certainly one that our analysts are trained to read."); Excerpts from 30(b)(6) Dep. Tr. of John Jacobs, dated Dec. 7, 2017, at 34:15–17, 36:4–7, attached as Exhibit D ("Jacobs Dep.") ("Q: . . . How much significance did you place on 38 Studios' financial condition?  A: Very little . . . . Q: And is it fair to say that, upon reading this, you appreciated the risks associated with 38 Studios?  A: Yes."); Excerpts from 30(b)(6) Dep. Tr. of John Spear, dated Dec. 14, 2017, at 37:15–20, 38:17–20,  attached as Exhibit E ("Spear Dep.") ("Q: . . . Turning to 38 Studios' financial conditions, I know you've talked about it, but again, how much weight, if any, did you put on the financial conditions and prospects of 38 Studios, the underlying company, in making your decision?  A: None . . . .Q: Did you feel pretty comfortable that you understood the risks that 38 Studios might become insolvent and unable to pay its debt service?  A: Yes.").

Regarding Wells Fargo's fees, the actual investors testified as follows: Shiel Dep. at 27:25–28:3 ("Q: Did the amount of Wells Fargo's fees have any significance to W.R. Berkley in making the decision to purchase the [EDC] Bonds?  A: No."); Winderl Dep. at 34:2–5 ("Q: And did the amount of Wells Fargo's fees have any significance to United Heritage in making its decision to purchase the bonds?  A: None whatsoever."); Jungquist Dep. at 27:24–28:2 ("Q: Did the amount of Wells Fargo's fees have any significance to Sit in making its decision to purchase the bonds?  A: No."); Jacobs Dep. at 31:13–16 ("Q: Did the amount of Wells Fargo's fees have any significance to Country in making its decision to purchase the bonds?  A: No."); Spear Dep. at 30:22–25 ("Q: Did

Knowing that it has a fatal weakness in its case, the SEC—without telling the Defendants—crafted during the discovery period one-sided Declarations for investors and potential investors in the hopes of creating materiality where there is none.  Even though these Declarations from non-parties were squarely responsive to the Defendants' document requests, the SEC withheld them.  And even though it now claims the Declarations were work product, the SEC failed to disclose them on a privilege log.  The SEC's failure to comply with its discovery obligations is unjustified and has unfairly prejudiced the Defendants.

As a result, the Defendants request the Court to preclude the SEC from using their Declarations in connection with any motion for summary judgment or otherwise in this matter. In the alternative, the Defendants request the opportunity to depose the declarants.

## PROCEDURAL BACKGROUND

On January 31, 2017, Wells Fargo served its First Set of Requests for Production of Documents and Things on the SEC ("Wells Fargo's Document Requests").  Attached as Exhibit F.  Wells Fargo's Document Request No. 2 requested the following: "All communications between you and any potential investors and/or their counsel concerning the 38 Studios Bonds, the Investigation, or the Action, including but not limited to any documents exchanged."[3]  Id. at 6.  In response to this Document Request, the SEC promised that should it "collect additional documents from any potential investors that are relevant to the substance of its claims or allegations, during the course of this litigation, it will produce any such documents on a rolling basis."  See SEC's Responses and Objections to Defendant Wells Fargo's First Request for the

---

the amount of Wells Fargo fees have any significance to USAA in making its decision to purchase the bonds?  A: No, it did not.").

[3]         The term "potential investor" means "any person that was offered an opportunity to invest in and/or purchase the [Bonds].  Wells Fargo's Document Requests at 6.  The term "Action" refers to the current proceeding, *Securities and Exchange Commission v. Rhode Island Commerce Corporation, et al.*, No. 1:16-cv-00107-M-PAS (D.R.I.).  *Id.* at 4.

Production of Documents, attached as <u>Exhibit G</u>, at 3–4.  Similarly, Wells Fargo's Document

Request No. 9 requested the following: "All documents and communications concerning your

informal or formal discovery requests relating to the Investigation, the Action, or any other

matter involving the 38 Studios Bonds, including but not limited to all documents or

communications you received in response to such informal or formal discovery requests."  Wells

Fargo's Document Requests at 6–7.  In response to this Document Request, the SEC promised

that should it "collect documents from any third party during the course of this litigation, it will

produce any such documents on a rolling basis."  *See* SEC's Responses and Objections to Wells

Fargo's Document Requests at 8.

> Wells Fargo also made the following relevant Document Requests:
>
> "All communications between you and any investors in the 38 Studios Bonds and/or their counsel concerning the 38 Studios Bonds, the Investigation, or the Action, including but not limited to any documents exchanged."  [Wells Fargo's Document Request No. 1];
>
> "All documents the SEC may rely upon at trial or at any hearing in this Action for any purpose."  [Wells Fargo's Document Request No. 11];
>
> "All documents and things that the SEC contends support the allegations and claims made in the Amended Complaint filed in this Action."  [Wells Fargo's Document Request No. 12]; and
>
> "All documents and things that tend to contradict, disprove, refute or undercut the SEC's allegations and claims made in the Amended Complaint filed in this Action. [Wells Fargo's Document Request No. 13]."

Wells Fargo's Document Requests at 6–7.

> In response to these Document Requests, the SEC stated the following:
>
> "Should the Commission collect additional documents from any investors in the 38 Studios Bonds that are relevant to the substance of its claims or allegations, during the course of this litigation, it will produce any such documents on a rolling basis."  [Response to Wells Fargo's Document Request No. 1];
>
> "[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the

allegations in its Amended Complaint, and will produce, prior to trial in accordance with the pre-trial schedule set by the Court, all documents that it expects to introduce into evidence at a trial in this case."  [Response to Wells Fargo's Document Request No. 11];

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the allegations and claims in its Amended Complaint."  [Response to Wells Fargo's Document Request No. 12]; and

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the allegations in its Complaint and its Amended Complaint and all documents that tend to contradict, disprove, refute or undercut those allegations."  [Response to Wells Fargo's Document Request No. 13].

SEC's Responses and Objections to Wells Fargo's Document Requests at 3, 8–10.

On February 27, 2017, Mr. Cannava served his First Set of Requests for Production of

Documents and Things on the SEC ("Mr. Cannava's Document Requests").  Dkt. No. 70-1.

Similarly, Mr. Cannava made the following relevant Document Requests:

"All documents the SEC intends to introduce into evidence at trial or at any hearing in this Action."  [Mr. Cannava's Document Request No. 17];

"All documents the SEC may rely upon at trial or at any hearing in this Action for any purpose."  [Mr. Cannava's Document Request No. 18];

"All documents and things that the SEC contends support the allegations and claims made in the Amended Complaint filed in this Action."  [Mr. Cannava's Document Request No. 19]; and

"All documents and things that tend to contradict, disprove, refute or undercut the SEC's allegations and claims made in the Amended Complaint filed in this Action."  [Mr. Cannava's Document Request No. 20].

*Id.* at 8.

The SEC responded to these Document Requests as follows:

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, and will produce, prior to trial in accordance with the pre-trial schedule set by the Court, all documents and things it expects to introduce into evidence at a trial in this case."  [Response to Mr. Cannava's Document Request No. 17];

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the allegations in its Amended Complaint, and will produce, prior to trial in accordance with the pre-trial schedule set by the Court, all documents and things that it expects to introduce into evidence at trial in this case." [Response to Mr. Cannava's Document Request No. 18];

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the allegations and claims in its Amended Complaint." [Response to Mr. Cannava's Document Request No. 19]; and

"[T]he Commission has produced all relevant, non-privileged documents gathered in connection with its investigation, including all documents supporting the allegations in its Complaint and its Amended Complaint and all documents that tend to contradict, disprove, refute or undercut those allegations." [Response to Mr. Cannava's Document Request No. 20].

SEC's Responses and Objections to Defendant Peter Cannava's First Request for the Production of Documents, Dkt. No. 70-2, at 11–13.

During fact discovery, the SEC sought and ultimately obtained the following seven declarations, which were not produced or disclosed to the Defendants:

1)  Declaration of Steven A. Thibodeau, former Chief Financial Officer of Sugar River Bank, dated October 31, 2017 ("Thibodeau Decl."), attached as <u>Exhibit H</u>.

2)  Declaration of Edward M. Murphy, Chief Investment Officer of Merchants Mutual Insurance Company ("Merchants"), dated November 6, 2017 ("Murphy Decl."), attached as <u>Exhibit I</u>.

3)  Declaration of Kurt Williams, Senior Investment Research Analyst of 40/86 Advisors, Inc. ("40/86 Advisors"), dated December 20, 2017 ("Williams Decl."), attached as <u>Exhibit J</u>.

4)  Declaration of Troy Peterson, Co-Portfolio Manager of Americo Financial Life and Annuity Insurance Company ("Americo"), dated January 2, 2018 ("Peterson Decl."), attached as <u>Exhibit K</u>.

5)  Declaration of Jason Krcmery, former Portfolio Manager of United Farm Family Life Insurance Company d/b/a Indiana Farm Bureau Insurance ("Indiana Farm"), dated January 12, 2018 ("Krcmery Decl."), attached as <u>Exhibit L</u>.

6)  Declaration of Scott Sell, former Vice President and Co-Head of Research at Prime Advisors, Inc. ("Prime Advisors"), dated January 23, 2018 ("Sell Decl."),  attached as

     Exhibit M.

7) Declaration of Edith F. Behr, Co-Manager of the Higher Education and Not-For-Profit Bond Ratings Team of Moody's Investor Service ("Moody's"), dated December 21, 2017 ("Behr Decl."),[4] attached as Exhibit N.[5]

Sugar River Bank and Merchants purchased the Rhode Island Economic Development Corporation Job Creation Guaranty Program Taxable Revenue Bonds (38 Studios, LLC Project), Series 2010 (the "Bonds") on the secondary market on April 12, 2011 and April 3, 2012, respectively, and there is no indication they saw the PPM that contains the two omissions alleged by the SEC in this matter.[6]  *See* Thibodeau Decl. at ¶ 8; Murphy Decl. at ¶ 6.  40/86 Advisors, Americo, Indiana Farm, and Prime Advisors considered purchasing the Bonds, but ultimately declined to make such a purchase.  *See* Williams Decl. at ¶ 7; Peterson Decl. at ¶ 14; Krcmery Decl. at ¶ 12; Sell Decl. at ¶ 13.  Moody's provided a rating of A2 for the Bonds.  *See* Behr Decl., at ¶ 6.[7]

In response to concerns raised by Mr. Cannava during the fact discovery period about the completeness and accuracy of the SEC's privilege log and its responses to document requests, the SEC assured Mr. Cannava and this Court that "[a]ll external communications with people outside of the Commission have already been produced."  *See* SEC's Opposition to Peter Cannava's Motion to Compel the Production of Documents, Dkt. No. 72, at 14; *see also* December 19, 2017 Letter from Kathleen Shields, SEC, Dkt. No. 70-8.  At the time the SEC

---

[4]     The Moody's Declaration refers to several different exhibits.  These exhibits were not attached to the copies of the Declaration served on the Defendants.  On May 22, 2018, Wells Fargo requested the SEC to produce the exhibits and the SEC subsequently provided Bates number references to the associated documents.

[5]     Mr. Thibodeau, Mr. Murphy, Mr. Williams, Ms. Behr, Mr. Peterson, Mr. Krcmery, and Mr. Sell are referred to collectively as the "Declarants."

[6]     Sugar Bank's purchase was over five months after the bond offering and Merchants' purchase was over 17 months after the bond offering.

[7]     This paragraph is based solely on the statements in the Declarations.  The Defendants have not independently verified these statements and are not making any admissions.

made these representations, it had already obtained (but not produced) the majority of the Declarations.  Although the SEC has since sought to justify its withholding of the documents as work product, the SEC did not disclose the Declarations on the supplemental privilege log produced by the SEC one day after the close of fact discovery.[8]  *See* Dkt. No. 72-2.

The first time the SEC disclosed that Moody's, Indiana Farm, or Prime Advisors were parties "likely to have discoverable information" was in its Revised Initial Disclosures, produced on the last day of fact discovery, and nearly a year after Wells Fargo served its First Request for the Production of Documents and Things.[9]  *Compare* SEC's Initial Disclosures dated November 28, 2016, attached as <u>Exhibit O</u>, *with* SEC's Revised Initial Disclosures dated January 17, 2018, attached as <u>Exhibit P</u>.  The SEC also provided more detailed contact information for a number of the other Declarants in its Revised Initial Disclosures.  *Compare* SEC's Initial Disclosures, *with* SEC's Revised Initial Disclosures.  Still, the SEC failed to disclose the existence of the Declarations in either its Revised Initial Disclosures or its supplemental privilege log.  *See* SEC's Revised Initial Disclosures; Dkt. No. 72-2.

Wells Fargo contacted by telephone a number of the entities that the SEC disclosed as being "likely to have discoverable information" in its Revised Initial Disclosures.  On Thursday, April 26, 2018, Wells Fargo learned for the first time, through its own efforts, of the existence of one of the Declarations.  By Wednesday, May 2, 2018, Wells Fargo confirmed that the SEC had obtained at least two Declarations.  Wells Fargo only learned about the existence of such Declarations through its own diligence.  The SEC had never informed the Defendants about the

---

[8]     Apart from this supplemental privilege log, the SEC produced its original privilege log on May 3, 2017 and a revised privilege log on September 13, 2017.  *See* Dkt. Nos. 70-4 and 70-6.  Neither of these privilege logs listed the Declarations as being withheld either.  *See id.*

[9]     Pursuant to this Court's Rule 26(f) discovery schedule, the deadline for fact discovery was originally October 20, 2017.  Dkt. No. 56 at 2.  This deadline was subsequently extended to January 17, 2018.  *See* Text Order granting Motion for Extension of Time to Complete Discovery dated September 7, 2017.

existence of the Declarations.

A few hours after confirming the existence of multiple Declarations,[10] Wells Fargo requested the SEC to immediately produce "all witness statements, declarations, or affidavits (as well as any documents)" that any "investors who considered purchasing the [Bonds], conducted transactions involving the [Bonds], or otherwise have some knowledge of the [Bonds]" provided to the SEC (the "Requested Material").  *See* Emails dated May 2, 2018 through May 4, 2018. Wells Fargo stated that the Requested Material falls within the scope of Wells Fargo's Document Request Nos. 2 and 9.  *Id.*  In light of the impending May 4, 2018 deadline for affirmative expert reports, Wells Fargo requested the SEC to produce the Requested Material immediately, but no later than May 3, 2018.  *See id.*[11]

The next day, Thursday, May 3, 2018, Wells Fargo followed up on its request and asked the SEC to confirm that it would produce the Requested Material that evening.  *Id.*  Wells Fargo also asked the SEC to state its basis for withholding the Requested Material if it intended to continue such withholding.  *Id.*  The SEC responded on Friday, May 4, 2018, by stating that it had not received Wells Fargo's May 2, 2018 request and proposed having a meet-and-confer on Tuesday, May 8, 2018.  *Id.*  In this response, the SEC did not state the basis for withholding the Requested Material.  *Id.*  Wells Fargo then asked the SEC for a second time to state its basis for withholding the Requested Material, but the SEC again failed to answer.  *See id.*

---

[10]     The SEC claims that Wells Fargo was aware of the Declarations "for several weeks" before raising the issue of their nondisclosure.  *See* Emails dated May 2, 2018 through May 4, 2018, attached as Exhibit Q.  This is not true.  At best, Wells Fargo knew of one Declaration approximately one week before it raised the issue with the SEC.

[11]     Simultaneously with this request, Wells Fargo produced a declaration provided by David Hitchcock, Senior Director at Standard & Poor's Financial Services (the "Hitchcock Declaration") to the SEC.  Wells Fargo produced the Hitchcock Declaration because the SEC had previously requested "[a]ll Documents [Wells Fargo] provide[s] to any expert witness who offers an expert report in this case."  Wells Fargo provided the Hitchcock Declaration to two experts, both of whom intended to offer an expert report in this case.  Therefore, Wells Fargo determined it was appropriate to produce the Hitchcock Declaration to the SEC.  Besides the SEC's request for documents provided to experts who offer an expert report, it does not appear that the Hitchcock Declaration falls within the scope of any of the SEC's other document requests.

Wells Fargo was agreeable to holding a meet-and-confer on this issue, but requested to have such a meeting immediately due to the May 4, 2018 deadline for affirmative expert reports. *Id.* The SEC informed Wells Fargo that it was unwilling to meet for a few minutes and that the earliest it would have any time would be Tuesday, May 8, 2018. *Id.* Wells Fargo subsequently agreed to conduct the meet-and-confer on Tuesday, May 8, 2018 at the SEC's preferred time. *Id.*

During the meet-and-confer, the SEC asked Wells Fargo to explain its basis for requesting the Requested Material. Wells Fargo reiterated that the Requested Material was responsive to Wells Fargo's Document Request Nos. 2 and 9, among other Document Requests, as previously stated in Wells Fargo's Wednesday, May 2, 2018 email. *See id.* Wells Fargo then asked the SEC (now for the third time) to state its basis for withholding the Requested Material. The SEC declined to provide its basis for withholding and indicated that it would need to confer internally on that issue. At this point, the SEC already had close to a full week from the time the Defendants raised the issue (and several months from the time it started securing the Declarations) to discuss internally its reasons for withholding the Requested Material.

Approximately two hours after the meet-and-confer, the SEC provided the Defendants with a short one-page letter stating that it would produce the Requested Material. Letter dated May 8, 2018 from Rua M. Kelly, SEC, attached as <u>Exhibit R</u>. Additionally, in this letter, the SEC provided a one sentence explanation for why it had withheld the Declarations:

> The Commission views the witness declarations as work product, particularly since the witnesses were equally available to the defense, and does not agree or concede that the declarations constitute documents required to be produced in response to Wells Fargo's document requests #2 and #9 as they are not contemporaneous documents we received from the witnesses.

*Id.* This single sentence is the only explanation the Defendants have ever received regarding why the SEC withheld the Declarations. The Defendants received the Declarations on

Wednesday, May 9, 2018.

On May 22, 2018, the parties held a meet-and-confer to discuss the Declarations and the relief requested in this Motion. No agreement could be reached. Instead, the SEC suggested to the Defendants that they should proceed with filing the Motion.

<u>**LEGAL STANDARD**</u>

"If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f) . . . the court where the action is pending may" issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Similarly, a "court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Further,"[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c). As an alternative to this sanction, a court "may impose other appropriate sanctions." *Id.*

When determining an appropriate sanction, a court should consider the following factors: "(1) the severity of the violation; (2) the legitimacy of the party's excuse for failing to comply; (3) whether the violations have been repeated[;] (4) the deliberateness of the misconduct; (5) any mitigating excuses; (6) prejudice to the other side and the operations of the court; and (7) the adequacy of lesser sanctions." *Summitbridge Credit Investments, III, LLC v. Hunt Marine I, LLC*, No. CA 13-139-ML, 2014 WL 551051, at *2 (D.R.I. Feb. 10, 2014) (citation omitted). A court should also consider "(1) whether the offending party was given sufficient notice, and (2) whether the offending party has been given an opportunity to explain its

noncompliance or argue for a lesser penalty." *Id.* Ultimately, "[t]he choice of an appropriate sanction is left to the discretion of the court." *Id.* at *1.

Aside from the issue of sanctions, a discovery schedule can be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In deciding whether to allow a limited reopening of fact discovery, the Court should consider the following factors: "(1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Providence Piers, LLC v. SMM New England, Inc.*, No. CV 12-532S, 2015 WL 11143862, at *3 (D.R.I. May 13, 2015) (citing *Pioneer Inv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).

## ARGUMENT

The SEC (1) failed to timely produce the Declarations in response to the Defendants' document requests; and (2) failed to disclose the Declarations in its Revised Initial Disclosures. Therefore, pursuant to Federal Rules of Civil Procedure 16(f), 26(a)(1)(A)(ii), 37(b)(2)(A), and 37(c)(1), the Court should preclude the SEC from using the Declarations as evidence on a motion, at a hearing, or otherwise in this matter. In the alternative, the Court should allow a limited reopening of fact discovery to permit the Defendants to probe the veracity, accuracy, and completeness of the Declarations, along with the personal knowledge of the Declarants. As discussed in more detail below, the Defendants propose conducting abbreviated depositions and serving a narrow set of document requests, all of which would directly relate to the Declarations.

**A.    The SEC's decision to forego disclosure and withhold the Declarations is a severe discovery violation.**

The Declarations fall squarely within the scope of Wells Fargo's Document Requests. Wells Fargo's Document Request No. 2 requires the SEC to produce the following:    "All

communications between you *and any potential investors* and/or their counsel concerning the 38 Studios Bonds, the Investigation, or the Action, *including but not limited to any documents exchanged*." Wells Fargo's Document Requests at 6 (emphasis added). Apart from Moody's, the other six Declarants qualify as "potential investors" and the Declarations constitute "documents exchanged" with the SEC. Similarly, Wells Fargo's Document Request No. 9 requires the SEC to produce the following: "All documents and communications concerning your informal or formal discovery requests relating to the Investigation, the Action, or any other matter involving the 38 Studios Bonds, *including but not limited to all documents or communications you received in response to such informal or formal discovery requests*." *Id.* at 6–7 (emphasis added). All seven of the Declarations constitute documents the SEC "received in response to … informal or formal discovery requests." The SEC promised on numerous occasions that, to the extent that it collected "additional documents from any potential investors" or "third party," it would produce such documents on a "rolling basis." *See* SEC's Responses and Objections to Wells Fargo's Document Requests at 3–4, 8. The SEC repeatedly failed to keep these promises.[12]

Besides Wells Fargo's Document Request Nos. 2 and 9, the Declarations are also responsive to a number of Wells Fargo's other Document Requests. *See*, *e.g.*, Wells Fargo's Document Requests at 6–7 (Wells Fargo's Document Request No. 1: "All communications between you and any investors in the 38 Studios Bonds and/or their counsel concerning the 38 Studios Bonds, the Investigation, or the Action, including but not limited to any documents exchanged."; Wells Fargo's Document Request No. 12: "All documents and things that the SEC contends support the allegations and claims made in the Amended Complaint filed in this

---

[12]   Apart from the promises it made, the SEC also has a continuing duty to supplement its responses to the Defendants' discovery requests. *See* Fed. R. Civ. P. 26(e).

Action.").  In Wells Fargo's Document Request No. 11, Wells Fargo specifically requested:  "All documents the SEC may rely upon at trial or at any hearing in this Action for any purpose."  *Id.* at 7.  Given that the SEC will likely attempt to rely on the Declarations in the hopes of defending against summary judgment, the SEC's failure to produce the Declarations in response to this request is particularly egregious.  Further, Wells Fargo's Document Request No. 16 requested production of "[a]ll documents and things identified in the SEC's Initial Disclosures it served on Wells Fargo in this Action."  *Id.*  Therefore, if the SEC had in fact properly disclosed the Declarations, the Declarations would have been responsive to Wells Fargo's Document Request No. 16 as well.  The Declarations are also responsive to a number of similar document requests served by Mr. Cannava.  *See* Mr. Cannava's Document Request Nos. 17–20, Dkt. No. 70-1, at 8.

The SEC's recent claim that it viewed the documents as somehow not responsive because they were not "contemporaneous documents [the SEC] received from witnesses" is unclear and unpersuasive.  Neither the Defendants' Document Requests nor the Federal Rules of Civil Procedure contain any such limitation.  *See* Wells Fargo's Document Requests; *see also* Mr. Cannava's Document Requests, Dkt. No. 70-1; 1 STEVEN S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, RULE 34 (2018) ("A party is required to supplement incomplete or inaccurate productions pursuant to Rule 26(e).  The duty to supplement extends to documents created or acquired after the response to the document request is served.").

Ultimately, the SEC produced the Declarations once Wells Fargo uncovered them through its own diligence.  But, despite the fact that the SEC obtained at least one Declaration as early as October 31, 2017, the SEC failed to produce the Declarations until nearly four months after the close of fact discovery, and then only because Wells Fargo uncovered the Declarations' existence.  This belated production of the Declarations is a direct violation of this Court's

discovery scheduling order, which established January 17, 2018 as the fact discovery deadline. *See supra* footnote 9.

The Court has inherent power to sanction the non-production of requested documents. *See Petroleum Ins. Agency, Inc. v. Hartford Acc. & Indem. Co.*, 106 F.R.D. 59, 70 (D. Mass. 1985). The SEC's failure to abide by the discovery schedule further warrants the imposition of sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) ("If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f) . . . the court where the action is pending may" issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence."); Fed. R. Civ. P. 16(f) ("On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling order or other pretrial order."); *Albemarle Corp. v. Chemtura Corp.*, 251 F.R.D. 204, 207–209 (M.D. La. 2008) (sanctioning defendants that had failed to produce responsive documents prior to the close of fact discovery). As this Court has previously stated, "[d]eadlines have to mean something" because they "allow courts to effectively administer their dockets." *SCVNGR, Inc. v. DailyGobble, Inc.*, No. 1:16-CV-00134-M-LDA, 2017 WL 3332224, at *2 (D.R.I. Aug. 3, 2017).

Rather than timely produce the Declarations pursuant to the Defendants' Document Requests, the SEC attempted to avoid its disclosure obligations. Six of the seven Declarations were signed prior to the close of fact discovery.[13] Yet, the SEC decided not to disclose these Declarations in its Revised Initial Disclosures, which it served on the very last day of fact discovery. *See* SEC's Revised Initial Disclosures. Instead, the SEC identified several Declarants for the first time and merely provided more detailed contact information for other Declarants.

---

[13] One declaration was signed five days after the close of fact discovery, but it is likely that it was being discussed and drafted well before the close of fact discovery. Any communications between the SEC and the Declarant, along with any draft declarations, would be responsive to Wells Fargo's Document Requests.

These amendments were insufficient to satisfy the SEC's disclosure obligations.

The SEC's decision to forego disclosure of the Declarations is a direct violation of Federal Rule of Civil Procedure 26(a), which requires the early disclosure of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." The Declarations had been within the SEC's possession and may be used to support its claims, yet the SEC failed to disclose them. The SEC also violated, and continues to violate, its ongoing obligation to supplement its disclosures and document productions that are incomplete in "some material respect." *See* Fed. R. Civ. P. 26(e); *Sender v. Mann*, 225 F.R.D. 645, 653–54 (D. Colo. 2004) ("[T]he objectives underlying Rule 26(a)(1) suggest that information 'is incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information *could substantially affect or alter the opposing party's discovery plan* or trial preparation.") (emphasis added). The Defendants explicitly reminded the SEC of this ongoing obligation when they served their Document Requests. *See* Wells Fargo's Document Requests at 4; Mr. Cannava's Document Request, Dkt. No. 70-1, at 3–4.

**B.     The SEC had no legitimate basis for withholding the Declarations.**

Despite the fact that the Declarations were responsive to the Defendants' Document Requests, the SEC has only offered a one sentence explanation for why it withheld the Declarations:

> The Commission views the witness declarations as work product, particularly since the witnesses were equally available to the defense, and does not agree or concede that the declarations constitute documents required to be produced in response to Wells Fargo's document requests #2 and #9 as they are not contemporaneous documents [the SEC] received from the witnesses.

*See* Letter dated May 8, 2018 from Rua M. Kelly, SEC.

The SEC's belated attempt to invoke the work product doctrine is misguided for numerous reasons.  First, as a primary matter, affidavits and declarations provided by non-parties are not protected by the work product doctrine.  *See, e.g.*, *Diaz v. Devlin*, No. 4:16-CV-40039-TSH, 2018 WL 1610541, at *9–10 (D. Mass. Apr. 3, 2018) ("Third-party affidavits are normally not immune from disclosure as attorney work product for the very reason that an affidavit purports to be a statement of facts within the personal knowledge of the witness, and not an expression of opinion of counsel . . . Because affidavits are nothing more than statements of facts within the affiant's personal knowledge, they are not fairly characterized categorically as work product betraying an attorney's thoughts concerning litigation.") (internal quotation marks and citations omitted); *F.D.I.C. v. Galan-Alvarez*, No. CIV. 12-1029 PAD, 2015 WL 5093620, at *2 (D.P.R. Aug. 28, 2015) ("The fact that record attorneys individually have a role in preparing affidavits of laypersons does not suffice to convert what is otherwise purely factual material by an affiant into work product.").[14]

Further, while work product protection may have existed with respect to the SEC's internal *drafts* of the declarations, any such protection was clearly waived when the SEC provided the Declarations to the Declarants and those Declarants signed them as their own.  *See United States v. Textron Inc. & Subsidiaries*, 507 F. Supp. 2d 138, 152 (D.R.I. 2007), *vacated on other grounds*, *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 23 (1st Cir. 2009) ("The work product privilege may be waived by disclosures to third parties in a manner which substantially increases the opportunity for potential adversaries to obtain the information.") (internal quotation marks omitted); *see also United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997) ("[D]isclosing material in a way inconsistent with keeping it from

---

[14]     The SEC previously produced its own notes of investor interviews from its investigative file.  The SEC did not claim that its own notes were protected by the work product doctrine.  It is unclear why the SEC believes the Declarations, adopted and signed by third-parties, should be afforded greater protection.

an adversary waives work product protection.  At least five circuits have adopted this rule in some form.").

Finally, the SEC's recent claim of work product protection is inconsistent with its previous statements in this Action.  In connection with Mr. Cannava's previous motion to compel the production of documents, the SEC distinguished between internal communications that were subject to work product or privilege protection, and external communications that required production.  *See* Letter dated December 19, 2017 from Kathleen Shields, SEC, Dkt. No. 70-8 ("All of the communications described on the Commission's privilege log are internal communications…[c]ommunications with all external parties have already been produced."); *see also* SEC Opposition to Peter Cannava's Motion to Compel the Production of Documents, Dkt. No. 72 at 14 ("[a]ll external communications with people outside of the Commission have already been produced.").  Nevertheless, at the time the SEC made these statements, it had already received several of the Declarations (from external parties) and failed to either turn them over or list them in any of its privilege logs, including its supplemental privilege log which was served on the last day of fact discovery. [15]  *See* Dkt. Nos. 70-4, 70-6, and 72-2.  The SEC's new theory of work product protection, articulated for the first time nearly four months later, is not persuasive.

The SEC has had numerous opportunities to provide more detailed reasoning for withholding the Declarations, but has declined to provide any such reasoning.  Wells Fargo asked the SEC to state its basis for withholding the Declarations on three separate occasions.  *See* Emails dated May 2, 2018 through May 4, 2018.  The parties also held two meet-and-confers

---

[15]    By failing to include the Declarations in its privilege logs, the SEC waived any potentially applicable work product protection.  *See, e.g.*, *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.  Although most of the reported cases arise in the context of a claim of attorney-client privilege, the 'specify or waive' rule applies equally in the context of claims of work product privilege.") (internal citation omitted).

regarding the withheld Declarations.  Through all of those email exchanges and telephone calls,

the SEC has not elaborated on its one sentence explanation for withholding the Declarations.

**C.     The SEC has unfairly prejudiced the Defendants by failing to disclose and withholding the Declarations.**

It appears that the SEC did not disclose the Declarations in a misguided attempt to gain

an inappropriate advantage in the current litigation.   By concealing the existence of the

Declarations, the SEC unfairly prejudiced the Defendants in at least two ways.   First, the SEC

prevented the Defendants from deposing the Declarants.  The SEC's assertion that the Declarants

were "equally available to the defense" misses the mark.  *See* Letter dated May 8, 2018 from Rua

M. Kelly, SEC.   The Declarations were clearly responsive to the Defendants' Document

Requests and should have been produced in a timely manner.   The Defendants could not have

been expected to guess both (1) that contrary to the discovery rules, the SEC would hide the

Declarations it received and (2) which of the hundreds of potential investors it had received them

from.  *See Sender*, 225 F.R.D. at 654 (refusing to require the defendants to "contact each and

every one of the [hundreds of] investors and brokers" listed on the plaintiff's initial disclosures).

The Defendants should have been afforded the opportunity to depose the Declarants specifically

about the statements in the Declarations.  *See Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d

294, 361 (E.D.N.Y. 2013) (recognizing that the "plaintiff prejudiced [the defendant's] ability to

depose [the affiant] or to investigate the substance of her affidavit" because the plaintiff had

failed to disclose the affidavit); *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D.

Mich. 2000) ("The materials at issue here are [a non-party's] affidavit, prior drafts of this

affidavit, and communications concerning this affidavit. Because the facts set forth in the

affidavits are not protected, Plaintiff is free to question [the non-party] at his deposition

regarding the statements contained in these affidavits.").   The SEC deprived the Defendants of

that opportunity by failing to disclose or produce the Declarations. [16]

Second, the SEC prevented Wells Fargo from providing the Declarations to its experts for consideration in connection with their expert reports. Wells Fargo repeatedly attempted to obtain the Declarations prior to the deadline for affirmative expert reports. *See* Emails dated May 2, 2018 through May 4, 2018. However, the SEC was unwilling to provide the Declarations or hold a meet-and-confer for Wells Fargo's request until after the expiration of this deadline. *See id.* In short, the SEC has wrongfully interfered with the Defendants' ability to take the discovery they need to adequately prepare for trial in this case. *See Sender*, 225 F.R.D. at 654 ("Had [the plaintiff] made proper disclosures in a timely manner, the [defendants] would have been in a position to factor that information into their discovery plan, would have had that information available to their experts, and could have taken that information in account in preparing a motion for summary judgment.").

Had it not been for Wells Fargo's diligence, the Defendants likely would not have learned about or obtained the Declarations until the SEC filed its summary judgment briefing in the fall of 2018. Courts have frequently held that this type of legal gamesmanship is entirely inappropriate and inconsistent with the spirit of the Federal Rules of Civil Procedure. *See, e.g.*, *Reyes-Santiago v. JetBlue Airways Corp.*, 932 F. Supp. 2d 291, 298 (D.P.R. 2013) ("None of the proffered justifications explain *why* [the defendant] waited until the eve of the discovery deadline to come forward with the *highly relevant* [evidence]. Rather, it appears that such an unjustifiable delay was meant to gain a strategical edge over [the] Plaintiffs. This sort of gamesmanship is frowned upon and ought to be sanctioned.") (emphasis in original); *Pulliam v. Lozano*, No. 1:07-CV-964-LJO-MJS, 2011 WL 335866, at *2 (E.D. Cal. Jan. 31, 2011) ("While Plaintiff may

---

[16]     The Defendants cannot now secure access to the Declarants. Indeed, one of the Declarants that spoke to and provided a Declaration to the SEC has already refused to even speak with Wells Fargo.

prefer to keep his evidence private until trial, the Federal Rules of Civil Procedure do not allow

him to do so.  One of the purposes of the civil discovery rules is to 'take the sporting element out

of litigation, partly by affording each party full access to evidence in the control of his

opponent.'") (quoting *Martin v. Reyonolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir.1961));  *see*

*also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts

gathered by both parties is essential to proper litigation.  To that end, either party may compel

the other to disgorge whatever facts he has in his possession.").

**D.     The Defendants requested relief is appropriate given the SEC's severe discovery violations.**

The Court should preclude the SEC from using the Declarations as evidence on a motion,

at a hearing, or otherwise because the SEC has repeatedly failed to produce responsive

documents and comply with its disclosure obligations.  *See* Fed. R. Civ. P. 37(c)(1); *Wilson v.*

*Bradlees of New England, Inc.*, 250 F.3d 10, 20 (1st Cir. 2001) (stating that Rule 37(c)(1)

"requires the near automatic exclusion of Rule 26 information that is not timely disclosed");

*Topalian*, 945 F. Supp. 2d at 361 (precluding the plaintiff from using an affidavit that it had

failed to disclose "until after the close of discovery").  The SEC deliberately withheld the

Declarations for months (and, in one instance, for over half a year).  Now, when questioned

about its decision to withhold the Declarations, the SEC has only offered a half-hearted and ill-

founded excuse that the Declarations are protected by the work product doctrine.

But, perhaps most importantly, preclusion is the appropriate remedy because it will

prevent any additional delays to the Court's established schedule.  *See Amoah v. McKinney*, No.

CV 4:14-40181-TSH, 2016 WL 6134119, at *8 (D. Mass. Sept. 2, 2016), *subsequently aff'd*, 875

F.3d 60 (1st Cir. 2017) ("[The court] consider[s] the effect of late disclosures on the court's

docket generally . . . Rather than encouraging vigilance and compliance, any remedy short of

preclusion would encourage others litigants to flout deadlines, safe in the belief that courts will not enforce their own scheduling orders.").  Moreover, the First Circuit has clearly stated that "it is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction."  *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001).

Preclusion is also warranted because the Declarations lack an adequate foundation and are not based on personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4) (stating that a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  The Declarations crafted by the SEC[17] are not limited to what the Declarants actually knew but seek to elicit speculation regarding "facts" told to them by the SEC that they did not know or consider at the time and hypotheticals regarding what they would have done *if* they knew things they did not know.  For example, the Declaration provided by Jason Krcmery states that he "*would have wanted to know* if Wells Fargo was earning fees from parties involved in the RIEDC Bond deal that were not disclosed" and that he "*would have considered* that information as part of the mix of facts that [he] considered when deciding whether to invest."  *See* Krcmery Decl. at ¶ 17 (emphasis added).  Similarly, the Declaration provided by Steven A. Thibodeau states: "*I most likely would not have* made the decision to purchase the RIEDC Bonds *if I had been informed* that the proceeds of the bond offering would not be sufficient for 38 Studios to complete the game Copernicus and that there was no viable mechanism in place to raise additional funds after

---

[17]     The similarity between the Declarations indicates that they may have been largely (if not entirely) drafted by the SEC.  *Compare, e.g.*, Krcmery Decl. at ¶ 16 ("I understand that 38 Studios would use the proceeds of the bond offering to complete an on-line game.  I would have wanted to know that the proceeds of the bond offering were not enough for 38 Studios to complete the on-line game it was funding from the bond proceeds."), *with*  Sell Decl. at ¶ 15 ("I understood that 38 Studios would use the bond proceeds to develop an on-line game.  I would have wanted to know that the RIEDC Bonds' proceeds were not sufficient for 38 Studios to complete its on-line game.").

the completion of the bond offering." *See* Thibodeau Decl. at ¶ 10 (emphasis added). These types of speculative and hypothetical statements, which are not based on personal knowledge, are not an appropriate foundation for a declaration. *See, e.g.*, *DiLeonardo v. Hartford Cas. Ins. Co.*, No. CA 10-361-ML, 2012 WL 1074290, at *9 (D.R.I. Mar. 29, 2012) (holding that statements in an affidavit "based on mere speculation and conjecture" were inadmissible); *E.E.O.C. v. Air Liquide USA LLC*, 692 F. Supp. 2d 658, 667 (S.D. Tex. 2010) (striking multiple speculative statements from declarations); *see also Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 47–48 (1st Cir. 2008) (affirming district court's disregard of "self-serving, factually-devoid declarations").

Other grounds also exist for precluding the SEC from using the Declarations. For example, in the case of the Declarations of Mr. Thibodeau and Mr. Murphy, there is no indication they even saw the PPM that is the sole basis of the SEC's claims here, which means that they could not have relied upon or been misled by it. *See* Thibodeau Decl. at ¶ 8; Murphy Decl. at ¶ 6. They also did not purchase the Bonds until April 12, 2011 and April 3, 2012, respectively, at which time the total mix of information made available to investors would have been completely different than it was at the time of the offering in the fall of 2010. *See id.*

Although the Defendants believe that precluding the use of the Declarations is the appropriate sanction, in the alternative, the Defendants request a limited reopening of fact discovery. The Declarations touch on what will likely be a key issue on summary judgment, namely the materiality of the alleged omissions. A limited reopening of fact discovery would allow the Defendants to probe the veracity, accuracy, and completeness of the Declarations. It would also allow the Defendants to determine if the Declarations are based on personal knowledge and to elicit key facts, such as whether the Declarants even saw the PPM.

Granting the Defendants' request for a limited reopening of fact discovery is well within this Court's discretion. *See* Fed. R. Civ. P. 16(b)(4) (stating that a discovery schedule can be modified "for good cause and with the judge's consent"); *Providence Piers*, 2015 WL 11143862, at *4 (granting a limited re-opening of discovery); *Armacost v. Amica Mut. Ins. Co.*, No. CA91-0477P, 1993 WL 489658, at *2 (D.R.I. Jan. 12, 1993) (same). In *M.L.C., Inc. v. N. Am. Philips Corp.*, the plaintiff argued that the "defendants' failure to produce" certain documents "effectively" precluded it from participating in nine depositions. 109 F.R.D. 134, 142 (S.D.N.Y. 1986). The plaintiff also argued that if the documents had been produced earlier in discovery, it would have sought to take additional depositions. *Id.* The court agreed with the plaintiff and allowed the reopening of discovery due to the defendants' failure to produce the requested documents. *Id.* The plaintiff was permitted to depose the nine individuals and seek to take further depositions. *Id.*

In the event that the Court opts to reopen fact discovery, the Defendants propose limiting such a reopening to (1) depositions of the Declarants and (2) production of a narrow set of documents by the Declarants. The Defendants are willing to limit the depositions to a total of 4 hours each in an attempt to minimize the costs and burden for the non-party Declarants. The Defendants are also willing to limit their document requests directed to the non-party Declarants to the following: "All communications, documents, declarations, affidavits, or witness statements, including all drafts, that you exchanged with the SEC." To phrase it differently, the Defendants are only looking to collect documents that are directly related to the drafting of the Declarations, not all documents the Declarants' possess relating to the Bonds.

The Defendants propose extending all deadlines by three months. No trial date has been set and a three month extension for limited fact discovery should have a relatively small impact

24

on the case's overall schedule. The Defendants propose three months in order to give the non-party Declarants adequate time to produce the requested documents and find a convenient date for the depositions. Declarant depositions and expert depositions could be scheduled simultaneously, but this approach would impose an added burden on the Declarants and the parties' experts.

Last, if the Court grants any of the Defendants' requested relief, the Defendants request an order compelling the SEC to reimburse the Defendants for the costs incurred in connection with the above described discovery violations. *See* Fed. R. Civ. P. 16(f)(2)("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award unjust."); Fed. R. Civ. P. 37(b)(2)(C) (providing language similar to Rule 16(f)(2)); Fed. R. Civ. P. 37(c)(1)(A) (stating that a court "may order payment of reasonable expenses, including attorney's fees, caused by the failure" to "provide information or identify a witness as required by Rule 26(a) or (e)"); *see, e.g.*, *Summitbridge Credit Investments, III*, 2014 WL 551051, at *2 (granting reimbursement of reasonable expenses, including attorney's fees, in connection with a Rule 37 sanctions motion).

**<u>CONCLUSION</u>**

For all the foregoing reasons, the Defendants respectfully request an order precluding the SEC from using the Declarations as evidence on a motion, at a hearing, or otherwise. In the alternative, the Defendants request a limited reopening of fact discovery. If the Court grants any of the Defendants' requested relief, the Defendants request an award of reasonable expenses, including attorney's fees, incurred in connection with the SEC's discovery violations.

Respectfully submitted,

*Luke T. Cadigan*
<u>*Michael R. Creta (by LTC with permission)*</u>
Luke T. Cadigan (admitted *pro hac vice*)
lcadigan@cooley.com
COOLEY LLP
500 Boylston Street, 14th Floor
Telephone: 617-937-2480
Facsimile: 617-937-2400

Christopher J. Valente (Bar No. 8808)
christopher.valente@klgates.com
Michael R. Creta (Bar No. 9535)
michael.creta@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Telephone: 617.261.3100
Facsimile: 617.261.3175

*Counsel for Defendant Wells Fargo
Securities, LLC*

*Brian T. Kelly*
<u>*Steven M. Richard (by BTK with permission)*</u>
Brian T. Kelly (*pro hac vice*)
bkelly@nixonpeabody.com
Stephen M. LaRose (*pro hac vice*)
slarose@nixonpeabody.com
Kathleen Ceglarski Burns (*pro hac vice*)
kburns@nixonpeabody.com
Steven M. Richard (#4403)
srichard@nixonpeabody.com
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel.: (401) 454-1000
Fax: (401) 454-1030

*Counsel for Defendant Peter M. Cannava*

Dated:  May 24, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2018, the foregoing document was filed electronically and is available for viewing or downloading from the ECF system.  This document was electronically served on the registered participants as identified on the notice of electronic filing (NEF).

*/s/ Luke T. Cadigan*